# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | : | |
| *IN RE SUBPOENA OF AT&T BY* | : | |
| *AUTHORITY OF THE HOUSE OF* | : | Misc. Case No. _____ |
| *REPRESENTATIVES OF THE CONGRESS OF THE* | : | |
| *UNITED STATES OF AMERICA* | : | |
| _____ | : | |

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION OF CLETA MITCHELL TO QUASH
THE CONGRESSIONAL SUBPOENA ISSUED TO AT&T**

i

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ……………………………………………..…… iii

STATEMENT OF FACTS ..………………………………………….……... 1

ARGUMENT …………………..…………………………………….….. 4

    A.  The Subpoena is Overly Broad and Seeks Information
    that is Insufficiently Related to the Special Committee's
    Investigation …………………………………………………… 4

    B. The Subpoena Violates Ms. Mitchell's Protections Under
    the First Amendment to the United States Constitution …………….…… 7

    C. The Subpoena Violates Ms. Mitchell's Protections Under
    the Fourth Amendment to the United States Constitution ………………… 9

    D.  The Subpoena Violates Federal Law …………………………...…… 10

## TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

Bates v. Little Rock,
  361 U.S. 516 (1960) .................................................................. 8

Carpenter v. United States,
  138 S. Ct. 2206 (2018) .......................................................... 9-10

Eastland v. United States Servicemen's Fund,
  421 U.S. 491 (1975) ................................................................. 6

Gibson v. Florida Legislative Investigation Committee,
  372 U.S. 539 (1963) ................................................................. 8

Hubbard v. United States,
  514 U.S. 695 (1995) ................................................................ 11

McGrain v. Daugherty,
  273 U.S. 135 (1927) ................................................................. 6

NAACP v. Alabama ex rel. Patterson,
  357 U.S. 449 (1958) ................................................................. 8

Quinn v. United States,
  349 U.S. 155 (1955) ................................................................. 6

Smith v. Maryland,
  442 U.S. 735 (1979) .............................................................. 9-10

Trump v. Thompson, et al.,
  D.C. Cir. Case No 21-5254 (December 9, 2021) .............................. 5

Trump v. Mazars,
  140 S. Ct. 2019 (2020) ............................................................. 5

United States v. Miller,
  425 U.S. 435 (1976) .............................................................. 9-10

United States v. Poindexter,
  951 F.2d 369, (D.C. Cir 1992) .................................................. 11

iii

**Page(s)**

*Watkins v. United States*,
   354 U.S. 178 (1957) ......................................................................... 5

**Constitution of the United States of America**

First Amendment ........................................................................ 7

Fourth Amendment ........................................................................ 9

**Statutes**

False Statements, 18 U.S.C. § 1001 ......................................................... 11

Stored Communications Act, 18 U.S.C. §§ 2701 *et seq.,* .............................. 11-12

State of Georgia Election Code, O.C.G.A. §§ 21-2-1 *et seq.* ........................... 7

**Rules**

*H. Res 503* (117th Congress) .............................................................. 2

*Rules of the United States House of Representatives,*
   R. XI (117th Congress) .................................................................... 2

**Other Authorities**

Barbara Sprunt, *Here are the 9 Lawmakers Investigating
   the Jan. 6 Capitol Attack*, National Public Radio, July 27, 2021 ...................... 9

Melanie Zanona *et al.*, *Liz Cheney and Adam Kinzinger prepare
   for blockbuster hearing amid attacks from their own party,*
   CNN, July 27, 2021 ....................................................................... 9

iv

Cleta Mitchell, a private citizen and a duly licensed attorney, respectfully submits this Statement of Points and Authorities in Support of Motion to Quash Subpoena issued to AT&T by the United States House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol ("Select Committee"), which seeks records associated with her cellular telephone number and account (the "Subpoena"). As set forth below, the Subpoena is overly broad, seeks information that is unrelated to the Special Committee's investigation, and violates Ms. Mitchell's protections under the First and Fourth Amendments to the U.S. Constitution, as well as federal law.

## STATEMENT OF FACTS

Cleta Mitchell is a licensed attorney practicing elections and campaign finance law and is admitted to the Bar of several courts, including the U.S. District Court for the District of Columbia (Decl. ¶ 2).[1] She is the co-founder and Chairman of the Public Interest Legal Foundation and the Senior Legal Fellow at the Conservative Partnership Institute (*id.*). Ms. Mitchell has served as a member of the Advisory Board to the American Bar Association's Standing Committee on Election Law and as a member American Law Institute Task Force on Principles of Election Administration, focused on disputes related to presidential elections (*id.*).

Following the 2020 general election, Ms. Mitchell spent much of her time in the State of Georgia applying her experience in election law to voting irregularities in that state, which included working on a lawsuit that was filed on December 4, 2020, and voluntarily dismissed on January 6, 2021 (Decl. ¶¶ 3-6). Ms. Mitchell was not in Washington, D.C., at any time between November 1, 2020 and January 6, 2021 (Decl. ¶ 7). She recalls being only vaguely aware that any

---

[1] Ms. Mitchell's Declaration ("Decl.") supporting her Motion to Quash is filed herewith.

post-election rally was planned for January 6, 2021, and she had no involvement in the planning or organization of that rally (Decl. ¶ 8-9).

On June 30, 2021, the United States House of Representatives adopted House Resolution 503 creating the Select Committee.[2] Resolution 503, in relevant part, authorized the Select Committee:

> To investigate and report upon the facts, circumstances, and causes relating to the January 6, 2021, domestic terrorist attack upon the United States Capitol Complex … and relating to the interference with the peaceful transfer of power, including facts and causes relating to the preparedness and response [of various law enforcement agencies], as well as the influencing factors that fomented such an attack on American representative democracy while engaged in a constitutional process.

The Resolution also authorized the Special Committee to "issue subpoenas pursuant to clause 2(m)" of Rule XI of the Rules of the House of Representatives, which authorizes subpoenas "to require … the production of such books, records, correspondence memoranda, papers, and documents as it considers necessary."[3]

On November 24, 2021, the Select Committee issued the Subpoena to AT&T requiring it to provide the following information related to Ms. Mitchell's cellular telephone number and account for the period of November 1, 2020 through January 31, 2021, which she uses for both personal and client-related purposes. The Subpoena calls for the production of:

Subscriber Information: All subscriber information for the Phone Number, including:

---

[2] H. Res. 503, Establishing the Select Committee to Investigate the January 6th Attack on the United States Capitol, 117th Congress (available at https://www.congress.gov/117/bills/ hres503/BILLS-117hres503eh.pdf). The Resolution provides that "[t]he Speaker shall appoint 13 Members to the Select Committee, 5 of whom *shall* be appointed after consultation with the Minority leader (H. Res. 503, Sec. 2(a)) (Emphasis provided). According to reports, the Resolution's requirement of consultation was not followed, which calls into question the validity of the Committee.

[3] Rules of the House of Representatives, 117th Congress, adopted February 2, 2021 (available at https://rules.house.gov/sites/democrats.rules.house.gov/files/117-House-Rules-Clerk.pdf).

a. Name, subscriber name, physical address, billing address, e-mail address, and any other address and contact information;

b.  All authorized users on the associated account;

c. All phone numbers associated with the account;

d. Length of service (including start date) and types of service utilized;

e. Telephone or instrument numbers (including MAC addresses), Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEI"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identifiers ("IMEI") associated with the accounts;

f. Activation date and termination date of each device associated with the account;

g. Any and all number and/or account number changes prior to and after the account was activated;

h. Other subscriber numbers or identities (including temporarily assigned network addresses and registration Internet Protocol ("IP") addresses); and

Connection Records and Records of Session Times and Durations: All call, message (SMS & MMS), Internet Protocol ("IP"), and data-connection detail records associated with Phone Numbers, including all phone numbers, IP addresses, or devices that communication with the Phone Number via delivered and undelivered inbound, outbound, and routed calls, messages, voicemail, and data connections.

The records the Select Committee seeks include those relating to Ms. Mitchell's professional communications with clients – both related and unrelated to the 2020 election – as well as her personal communications with family and friends (Decl. ¶ 12). The Select Committee also seeks records of other cellphone users on Ms. Mitchell's account, which would require disclosure of information from her husband's account.

Under cover of a letter dated December 2, 2021 (and received by Ms. Mitchell on December 4, 2021), AT&T provided Ms. Mitchell with a copy of the Subpoena and notified her that it intends to respond to the Committee on December 16, 2021, unless it receives a copy of her

3

court filing contesting the Subpoena.[4] The Subpoena comes on the heels of a Special Committee letter dated August 30, 2021, whereby it directed AT&T (and at least 34 other telecommunications and social media companies) to preserve customer information for the period April 1, 2020, through January 31, 2021.[5] The Committee has not publicly released the names of the account holders that were the subject of the preservation letters. The requests included location data and the "[c]ontent of communications, including all emails, voice messages, text or SMS/MMS messages, videos, photographs, direct messages, address books, contact lists, and other files or other data communications stored in or sent from the account …."

On December 10, 2021, a Senior Investigative Counsel for the Special Committee confirmed that the Subpoena does not seek disclosure of the content of Ms. Mitchell's communications or geo-location information. Counsel also represented that the Special Committee has communicated those clarifications to AT&T. Nonetheless, the Subpoena is unwarranted intrusion on Ms. Mitchell's privacy and confidential attorney communications. The undersigned counsel communicated with counsel for the Special Committee on December 14, 2021 and requested that the Special Committee withdraw the Subpoena. It declined to do so.

## ARGUMENT

Notwithstanding the Special Committee's clarification of its Subpoena to AT&T, Ms. Mitchell asks this Court to quash the Subpoena for the reasons set forth below.

### A. The Subpoena is Overly Broad and Seeks Information that is Insufficiently Related to the Special Committee's Investigation

---

[4] Counsel for Ms. Mitchell plans to provide AT&T with a copy of this filing.

[5] Ms. Mitchell learned of the August 30, 2021, letters from the media and assumes that she was included in the preservation requests because of the Committee's subsequent issuance of the Subpoena.

4

For purposes of the instant Motion, Ms. Mitchell does not dispute the legitimacy of the Special Committee's investigation into the events at the U.S. Capitol on January 6th. She acknowledges that the U.S. Court of Appeals for the District of Columbia Circuit recently affirmed the Committee's legitimate "legislative purpose" in *Trump v. Thompson, et al.*, D.C. Cir. Case No 21-5254 (December 9, 2021). However, there are material distinctions between that case and the present controversy.

In *Trump*, the Court considered whether a former President could prevent the disclosure of official records by asserting executive privilege where the sitting President declined to assert privilege over the records at issue. In that matter, the Special Committee and the sitting President agreed that Congress had "established that the information sought is vital to its legislative interests and the protection of the Capitol and its grounds," and the Court found that the Special Committee "has also demonstrated a sound factual predicate for requesting" the former President's documents. *Id.* at 37, 42. The Court also noted that the former President brought suit "solely in his 'official capacity' as the '45th President of the United States'" and "does not assert that disclosure of the documents … would harm any personal interests in privacy or confidentiality." *Id.* at 47. None of those factors is present here.

It is well established that Congressional subpoena authority is not unlimited. A congressional subpoena "is valid only if it is related to, and in furtherance of, a legitimate task of the Congress." *Trump v. Mazars*, 140 S. Ct. 2019, 2031 (2020) (remanding the D.C. Circuit's upholding of congressional subpoenas for President Trump's personal financial records to consider whether the information was available through other means, whether the subpoenas were sufficiently narrow, whether the subpoenas furthered, and the burden that compliance would place on the President) quoting *Watkins v. United States*, 354 U.S. 178 (1957) (internal quotations

omitted) (reversing a Contempt of Congress conviction for refusing to answer questions about knowledge of Communist Party members). "Congress may not issue a subpoena for the purpose of law enforcement because those powers are assigned under our Constitution to the Executive and the Judiciary." *Id.* quoting *Quinn v. United States*, 349 U.S. 155, 161 (1955) (internal quotations omitted) (similar to *Watkins*). "Congress has no general power to inquire into private affairs and compel disclosures." *Id.* quoting *McGrain v. Daugherty*, 273 U.S. 135, 179 (1927) (internal quotations omitted) (reversing a District Court order discharging from custody a subpoenaed witness who had failed to appear before a Senate committee). "There is no congressional power to expose for the sake of exposure." *Id.* quoting *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 506 (1975) (internal quotations omitted) (upholding a Senate subcommittee's subpoena to the bank of an organization in connection with its inquiry into whether the organization was harmful to the morale of the United States armed forces).

The Subpoena to AT&T seeks subscriber information and records of all telephone calls and text messages from Ms. Mitchell's personal cellular telephone for the period from November 1, 2020 through January 31, 2021. Ms. Mitchell's legal work regarding 2020 election and post-election matters was entirely lawful, protected under the First Amendment, and wholly unrelated to the events of January 6th or any other matter that is legitimately within the purview of the Committee's investigation. The Subpoena improperly intrudes upon Ms. Mitchell's work as an attorney and violates the protections and privileges she has as a citizen. Moreover, the Committee's demand for records of private communications is overly broad and calls for the production of information that is beyond the scope of the Committee's authorizing Resolution.

During the time period referenced in the Subpoena, Ms. Mitchell was engaged in constitutionally protected activity in furtherance of upholding and enforcing the statutes of the

State of Georgia's Election Code, O.C.G.A. §§ 21-2-1 *et seq*. According to the applicable precedent, the Special Committee must demonstrate that the information sought would further its legislative mission. It is difficult to see how Ms. Mitchell's personal and professional communications for more than two months prior to January 6, 2021, and nearly a month after that date are relevant to that inquiry.

### B. The Subpoena Violates Ms. Mitchell's Protections Under the First Amendment of the U.S. Constitution

To the extent that the Subpoena seeks records about Ms. Mitchell's personal communications, information that is wholly irrelevant to the Special Committee's investigation, it violates the free speech and association rights that are protected by the First Amendment to the U.S. Constitution. The Committee cannot demonstrate a compelling justification that would justify such an intrusion, and this Court should be particularly concerned when the records sought are those of a practicing attorney.[6]

The Subpoena seeks records that would provide information about Ms. Mitchell's work during the November 3, 2020, Presidential election as an elections lawyer. It also seeks records pertaining to her activities while she was not present in the District of Columbia (Decl. ¶ 7). There is no evidence to suggest that Ms. Mitchell had anything to do with what happened at the Capitol on January 6th or otherwise has information contemplated by House Resolution 503.

---

[6] Ms. Mitchell does not blanketly assert that detail records of her telephone calls and text messages that do not include the content of those communications are protected under the Attorney-Client Privilege, or the Attorney Work Product Doctrine. However, even the non-content details of those communications with clients are sensitive and, at a minimum, deserving of protection against an overly broad subpoena. Ms. Mitchell submits that it is also entirely possible that some of the details of her communications with clients both related and unrelated to the 2020 election rise to the level of Attorney-Client Privileged Communications and/or Attorney Work Product. And, should the Select Committee obtain three months of Ms. Mitchell's records, there is nothing to prevent it from publicly releasing that information.

"It is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute" an "effective restraint on freedom of association." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958) (compelling disclosure of membership in an organization engaged in advocacy of particular beliefs violated constitutional protections). Not only would such a requirement "affect adversely the ability of [an organization] and its members to pursue their collective effort to foster beliefs which they admittedly have the right to advocate," but it might "induce members to withdraw from the Association and dissuade others from joining it because of the fear of exposure of their beliefs shown through their associations and of the consequences of this exposure." *Id.* at 462-63. *See also Bates v. Little Rock*, 361 U.S. 516, 523 (1960) (reversing convictions of NAACP records custodians who refused to provide the organization's membership lists to city officials); *Gibson v. Florida Legislative Investigation Committee*, 372 U.S. 539 (1963) (reversing a NAACP branch president's conviction for contempt for refusing to produce membership records to a state legislative committee). Where a required disclosure impacts a citizen's constitutional protections, the government must demonstrate a compelling interest in order to subordinate those protections. *NAACP*, 357 U.S. at 463.

Ms. Mitchell's cellular telephone and text message records, even if they do not contain the "content" of her communications, from two days before the November 2020 election through January 2021, resemble a political membership list in that they would include detailed information about her communications with senior Trump campaign officials, donors, and other supporters of the former President. It is no secret that the Committee is comprised of Donald Trump's political adversaries[7] and, in the absence of a legitimate purpose, compelling the production of the

---

[7] *See, e.g.,* Barbara Sprunt, *Here are the 9 Lawmakers Investigating the Jan. 6 Capitol Attack*, National Public Radio, July 27, 2021 (available at https://www.npr.org/2021/07/27/1020713409/here-are-the-9-lawmakers-investigating-the-jan-6-capitol-attack); Melanie Zanona *et al., Liz*

telephone records could improperly disclose information to persons who are interested in making partisan political points or harassing Ms. Mitchell.

The Special Committee lacks a compelling intertest in three months of Ms. Mitchell's telephone and text message records that would outweigh her protections under the First Amendment. Ms. Mitchell had no involvement in the January 6th rally and her work as an elections lawyer provides no justification for issuance of the Subpoena. Absent a sufficient showing, the Committee lacks a compelling interest in obtaining even non-content records that disclose constitutionally protected activities, let alone those private communications with clients, friends, and relatives.

### C. The Subpoena Violates Ms. Mitchell's Protections Under the Fourth Amendment of the United States Constitution

The Subpoena also constitutes an unreasonable search and violates Ms. Mitchell's right to be secure in her person, papers, and effects under the Fourth Amendment of the U.S. Constitution. Where an individual has a reasonable expectation of privacy, "official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause." *Carpenter v. United States*, 138 S. Ct. 2206, 2221 (2018) citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979). In *Carpenter*, the U.S. Supreme Court held that the government must obtain a warrant in order to obtain an individual's cell-site location information. In doing so, the Court declined to extend the reasoning of its earlier decisions in *Smith* and *United States v. Miller*, 425 U.S. 435 (1976) to the government's collection of cell-site location information. In *Miller*, the Court rejected the argument that a government subpoena to Miller's bank seeking his banking records violated

---

*Cheney and Adam Kinzinger prepare for blockbuster hearing amid attacks from their own party*, CNN, July 27, 2021 (available at https://edition.cnn.com/2021/07/26/politics/liz-cheney-adam-kinzinger-republican-attacks/index.html).

the Fourth Amendment. *Smith* extended that reasoning to reject a Fourth Amendment challenge to the government's use of a pen register that recorded outgoing phone numbers dialed on a landline telephone. In both cases, the Court declined to find a reasonable expectation of privacy in information that was with a third party (*i.e.*, the bank and the phone company), and the government's collection of that information therefore was not a search for purposes of the Fourth Amendment. In *Carpenter*, the Court noted the vast amount of information associated with modern communications and clarified that "[T]he fact that the government obtained the information from a third party does not overcome [a] claim to Fourth Amendment protection." *Id.* at 2219.

The Select Committee has stated that it is not seeking the content of phone calls or text messages or geolocation information, although the Internet Protocol ("IP") address information sought by the Subpoena might well disclose Ms. Mitchell's location information when she connected to various Wi-Fi networks. At a minimum, the extensive information sought by the Subpoena – such as the names or all users associated with the account, the activation and termination dates of each device associated with the account, and all phone numbers, IP addresses, or devices that communicated with her phone number – dwarf the nature of the information obtained by a pen register in *Smith* in 1979. Ms. Mitchell submits that the information sought is more akin to the cell-site data that was the subject of the Supreme Court's decision in *Carpenter*, that she has a reasonable expectation of privacy in that information, particularly as an attorney, and that the Special Committee's demand for that information is a "search" under the Fourth Amendment requiring a court order.

### D.  The Subpoena Violates Federal Law

The Stored Communications Act, 18 U.S.C. §§ 2701 *et seq.,* prohibits an electronic service provider like AT&T from knowingly divulging "a record or other information pertaining to a

subscriber to or customer of such service (not including the contents of communications …) to any governmental entity." 18 U.S.C. § 2702(a)(3).[8] The law provides exceptions that allow for the disclosure of non-content customer records under certain conditions, including where a "governmental entity" obtains a judicial warrant or "an administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury or trial subpoena …" 18 U.S.C. §§ 2702(c)(1), 2703(c).

The statute defines the term "governmental entity" as "a department or agency of the United States or any State or political subdivision thereof." 18 U.S.C. § 2711(4). The definition does not include the U.S. Congress. It is not as though Congress was unaware of the need to include itself in the definition of a criminal statute for the statute to encompass congressional requests for information. During the Iran-Contra prosecutions in the early 1990s, former National Security Advisor John Poindexter argued that his convictions for making false statements to Congress under 18 U.S.C. § 1001 should be vacated because that statute prohibited false statements made "in any matter within the jurisdiction of any department or agency of the United States," and that the phrase "department or agency" did not include Congress. *See United States v. Poindexter*, 951 F.2d 369, (D.C. Cir 1992); *Hubbard v. United States*, 514 U.S. 695 (1995) (reversing a conviction based on a false statement to a court and discussing in dicta the application of 18 U.S.C. § 1001 to Congress).

While the D.C. Circuit was not "persuaded to carve out a broad legislative function exception to § 1001", Congress amended that statute in 1996 to remove any uncertainty by applying the law to false statements made "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States." P.L. 104-292 (104th

---

[8] The Stored Communications Act also prohibits the disclosure of the contents of communications. In view of the Select Committee's representation that it is not seeking that information, our discussion here is limited to the Act's provisions pertaining to non-content information.

Congress). The Stored Communications Act has been with us since 1986. If Congress wished to include itself in the Act's "governmental entity" exceptions to the general prohibition against disclosing information, it certainly could have done so as it did in the context of 18 U.S.C. § 1001.

For the foregoing reasons, Ms. Mitchell respectfully request that this Court grant her Motion to Quash the Committee's Subpoena to AT&T.

Dated:  December 15, 2021

Respectfully submitted,

John P. Rowley III
JPROWLEY LAW PLLC
DC Bar No. 392629
1701 Pennsylvania Avenue, NW, Suite 200
Washington DC 20006
john.rowley@jprowleylaw.com
Telephone: 202 525 6674

*Counsel for Cleta Mitchell*

12